UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DANIEL LIPSKY, <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN J. JACKLEY, IN HIS INDIVIDUAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; THOMAS DENNY SANFORD, SANFORD HEALTH, A NON-PROFIT PRIVATE CORPORATION; FIRST PREMIER BANK, A FOR-PROFIT PRIVATE CORPORATION; FEDERAL JUDGE LAWRENCE PIERSOL, IN INDIVIDUAL CAPACITY; FEDERAL JUDGE CAMILLA THEELER, IN INDIVIDUAL CAPACITY; FEDERAL JUDGE ERIC SCHULTE, IN INDIVIDUAL CAPACITY; AND JOHN AND JANE DOE 1-12, CURRENTLY UNKNOWN POSSIBLE CO-DEFENDANTS; <br><br> Defendants. | 4:25-CV-04136-RAL <br><br><br> OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS |

Plaintiff Daniel Lipsky alleges one count of the Racketeer Influenced and Corrupt Organizations Act (RICO) against all Defendants for their involvement "in running a massive bribery scheme involving judges and politicians for their own political and financial benefit," and one count under 42 U.S.C. § 1983 against Defendant Martin J. Jackley for his failure to investigate and intervene in alleged police corruption in Fall River County, South Dakota. Doc. 1. Lipsky seeks injunctive relief as well as compensatory and punitive damages. Id.

1

Before this Court are five motions to dismiss, filed by five groups of Defendants: (1) Martin Jackley; (2) First Premier Bank; (3) Sanford Health; (4) U.S. District Court Judges Lawrence Piersol,[1] Eric Schulte, and Camela Theeler[2]; and (5) Thomas Denny Sanford. Docs. 21, 31, 33, 41, 44. The John and Jane Doe defendants have not been identified, and no counsel has entered an appearance on their behalf. Lipsky has not filed memoranda in opposition to any of the five pending motions to dismiss, and his time to do so under the Local Rules for the District of South Dakota has run. See D.S.D. Civ. LR 7.1(B) ("On or before 21 calendar days after service of a motion and brief, unless otherwise specifically ordered by the court, all opposing parties must serve and file a responsive brief containing opposing legal arguments and authorities in support thereof.").[3] The Defendants move under Federal Rule of Civil Procedure 12(b)(5) and (b)(6) for insufficient service of process and failure to state a claim. Docs. 21, 31, 33, 41, 44. For the reasons explained below, Defendants' motions to dismiss are granted.

## I.    Factual Allegations

Lipsky's Complaint against Defendants incorporates by reference two previous lawsuits that Lipsky has brought in the District of South Dakota, Lipsky v. Cronin, 22-cv-05039-LLP, and Lipsky v. Piersol, 24-cv-05074-CCT. See Doc. 1. While the pleadings and filings from these cases are not attached to the Complaint, when deciding Rule 12(b) motions, courts may "consider

---

[1] The Honorable Lawrence L. Piersol took inactive senior status on July 31, 2025, after thirty-two years as a district judge. Attorney Newsletter August 2025, U.S. Dist. Ct. Dist. S.D. (Aug. 15, 2025), https://www.sdd.uscourts.gov/content/attorney-newsletter-august-2025.

[2] Lipsky listed as a Defendant, "Camilla Theeler." The Defendant's actual name is Camela Theeler. This Court will use the correct spelling of Judge Theeler's first name.

[3] Lipsky has made two other filings on the docket since the first motion to dismiss was filed on October 14, 2025, which this Court has considered. See Docs. 28, 29.

matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (cleaned up and citation omitted).

In 2022, Lipsky brought a federal civil rights lawsuit against the City of Hot Springs and several of its police officers for actions arising out of a traffic stop that involved Lipsky (the 2022 case). See 5:22-cv-05039-LLP. During the 2022 case, Lipsky attempted to subpoena the South Dakota Division of Criminal Investigation (DCI). See Doc. 25 in 5:22-cv-05039-LLP. The South Dakota Attorney General's Office moved to quash that subpoena, which was granted by Magistrate Judge Daneta Wollmann. See Docs. 33, 56 in 5:22-cv-05039-LLP. The Defendants moved for summary judgment in the 2022 case. Doc. 51 in 5:22-cv-05039-LLP. Lipsky did not respond, even after Judge Piersol reminded Lipsky of his failure to respond and extended his time to respond. See Doc. 72 in 5:22-cv-05039-LLP. Judge Piersol dismissed the 2022 case after granting the defendants' motion for summary judgment. Doc. 87 in 5:22-cv-05039-LLP; see id. at 1 ("This Court has notified Plaintiff three times of his opportunity to respond to the basis of Defendants' motion for summary judgment and has extended the deadline to respond several times. The Court has delayed judgment long enough and will now rule on the motion based on the supporting materials available to it.").

During the 2022 case against Hot Springs and its officers, Lipsky filed another federal civil rights lawsuit against Judge Piersol alleging Judge Piersol had violated Lipsky's Fifth Amendment right to due process (the 2024 case). See Doc. 1 in 5:24-cv-05074-CCT. Judge Theeler received assignment of the 2024 case and ultimately dismissed the 2024 case because Judge Piersol was entitled to absolute judicial immunity. See Lipsky v. Piersol, No. 5:24-CV-05074, 2025 WL 990246 (D.S.D. Apr. 2, 2025).

In the present Complaint,[4] Lipsky alleges the existence of "a massive racketeering bribery conspiracy involving the named defendants[,] [s]pecifically, the payoff of several federal judges, and a sitting South Dakota Senator." Doc. 1 at 3. Liberally construing the Complaint, Lipsky alleges that Denny Sanford, through various companies including Sanford Health and First Premier Bank, has bribed Judge Piersol and Judge Theeler. Id. at 4–6, 5–6 ("It should be clear at this point that Judges Piersol and Theeler are on Denny Sanford's payroll."). Lipsky also alleges that Jackley, who was Sanford's attorney before returning to be South Dakota's Attorney General, investigated a state senator causing that senator to resign, and thereby allowed the appointment of a new senator. Id. at 5–6. Lipsky appears to allege that Jackley investigated the state senator at Sanford's behest, and that the new senator[5] then nominated Judge Theeler for her current position as a United States District Judge, potentially in part because Theeler's husband is an executive at First Premier Bank. Id.

Lipsky alleges that "anyone having an adverse interest to Sanford or his octopus of racketeering companies will find themselves in a completely lost position." Id. at 6. In addition, Lipsky alleges that "Jackley is the manager for Sanford and his companies [sic] racketeering activities in the state of South Dakota." Id. at 7. Lipsky finally alleges criminal and civil wrongdoing by Sanford personally and Sanford Health, and he includes in his Complaint what

---

[4] This Court summarizes the allegations from Lipsky's Complaint and is making no factual findings as part of this decision.

[5] State senators of course do not nominate candidates for federal judicial appointments; the President does. United States Senators, but not state senators, have a role in the process of selecting and confirming an Article III federal judge. See Michael A. Fragoso, The Judicial Appointment Process, Harv. J.L. & Public Pol'y Per Curiam, Summer 2024, at 4 ("As the White House considers and evaluates candidates, it will communicate with the home-state [federal] Senators for the judicial vacancy. In the case of district judges, these Senators have functional veto power via the blue-slip process, so their input is critical.").

appear to be news announcements concerning a criminal case against Sanford, allegations of improper waste disposal by Sanford Health in North Dakota, and a 2019 settlement between Sanford Health and the U.S. Department of Justice. Id. at 7–10.

Lipsky alleges standing to bring the present suit because (1) Sanford had Judges Piersol and Theeler "fix" cases for him, including Lipsky's recent cases in front of Judges Piersol and Theeler, and (2) Jackley interfered with Lipsky's 2022 case against the Hot Springs Police Department because it would hurt Jackley's future political ambitions to allow (what Lipsky believes to be) evidence of local corruption to be released. Id. at 11–12.

In their motions, all Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Docs. 21, 31, 33, 41, 44. Some Defendants have additionally argued that the Complaint fails to comply with Rule 8, and some have moved to dismiss under Rule 12(b)(5) for improper service. See id. Lipsky has not responded to any of the motions, but he has made additional unrelated filings in this Court as of the date of this Opinion and Order. See Docs. 28, 29. After reviewing all matters of record, this Court grants the motions to dismiss without prejudice under Rule 12(b)(6) for failure to state a claim.[6]

## II.    Legal Standard

On a motion to dismiss under Rule 12(b)(6), courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor but need not accept a plaintiff's legal conclusions. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012). To survive a motion to dismiss for failure to state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[6] As this Court is dismissing the Complaint under Rule 12(b)(6), it does not reach Defendants' arguments for dismissal asserted under Rule 12(b)(5) at this time.

Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are unnecessary, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely,'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Still, "conclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. Iqbal, 556 U.S. at 678 (alteration in original) (citation and internal marks omitted).

This Court gives Lipsky's filings a liberal construction based on his status as a pro se plaintiff. "A document filed pro se is to be liberally construed . . . [and] however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citation modified). A pro se plaintiff still "must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (alteration in original) (quoting Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) (per curiam)).

## III.    Analysis

### A.   Count I – RICO

Liberally construing Count I, Lipsky alleges a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), based on predicate acts of bribery, as criminalized by 18

U.S.C. § 201, which he has pleaded against "all defendants." See Doc. 1 at 14–15. Specifically, Lipsky asserts the following:

> 1. That the defendants are involved in running a massive bribery scheme involving judges and politicians for their own political and financial benefit.

> 2. Sanford Health is a privately held company with no shareholders and does not hold shareholder meetings. Sanford Health is a front for racketeering activities and the corporate veil should be pierced by allowing its main controller Denny Sanford and possibly its main directors to be held personally accountable.

Id.

### 1. Judiciary Defendants

This Court first takes up the question of absolute judicial immunity. Lipsky has alleged that United States District Judges Piersol, Schulte, and Theeler were involved in a RICO enterprise when presiding over cases Lipsky has previously brought in the District of South Dakota. Doc. 1. Judges Piersol, Schulte, and Theeler move to dismiss by arguing they are entitled to absolute judicial immunity. Doc. 42 at 6–10. For Count I against Defendants Judges Piersol, Schulte, and Theeler in their individual capacities, dismissal is appropriate on immunity grounds.

Judicial immunity means a "judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances." Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012). The two circumstances where judicial immunity does not apply are when the alleged actions are "not taken in the judge's judicial capacity" or were "taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991). "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity," Schottel, 687 F.3d at 374 (quoting Birch v. Mazander, 678 F.2d 754, 756 (8th Cir. 1982)), and immunity applies even if the "action [the judge] took was in error . . . or was in excess of his authority," Mireles, 502 U.S.

7

at 13 (citation omitted). A plaintiff cannot overcome judicial immunity based on "mere allegations of bad faith, malice, or corruption." U.S. ex rel. Goldsmith v. Schreier, No. CIV. 12-4155, 2012 WL 4088858, at *3 (D.S.D. Sep. 17, 2012) (citing Mireles, 502 U.S. at 11); see also Woodworth v. Hulshof, 891 F.3d 1083, 1091–92 (8th Cir. 2018).

Here, even accepting Lipsky's allegations as true, Judge Piersol was acting in his judicial capacity and within his jurisdiction when he issued various orders in and ultimately dismissed the 2022 case after Lipsky failed to respond to the defendants' motion for summary judgment. See Doc. 87 in No. 5:22-cv-05039-LLP.[7] Similarly, Judge Theeler was acting in her judicial capacity and within her jurisdiction when she dismissed Lipsky's 2024 case against Judge Piersol after finding him entitled to judicial immunity. See Doc. 18 at 11 in 5:24-cv-05074-CCT. Judge Schulte is named in the present case's caption, but Lipsky's complaint is devoid of any allegations against Judge Schulte concerning actions taken either outside of his judicial capacity or in the absence of jurisdiction. See Doc. 1; Mireles, 502 U.S. at 11–12. Therefore, Lipsky's allegations do not surmount absolute judicial immunity for any of the three federal judge defendants, and the RICO claim against Judges Piersol, Theeler, and Schulte must be dismissed with prejudice. See Strickland v. Rueger, No. 25-2056, 2026 WL 607412, at *7 (D. Minn. Mar. 4, 2026), reconsideration denied, 2026 WL 793246 (D. Minn. Mar. 20, 2026) (concluding that as plaintiff "has not alleged any actions that fall outside the scope of judicial immunity, therefore, all claims against Judiciary Defendants are dismissed with prejudice").

---

[7] To the extent that Lipsky is alleging that Piersol's communications with the Clerk's Office were improper or a part of the "RICO enterprise," these would also be judicial actions covered by judicial immunity. See Grazzini-Rucki v. Knutson, 597 F. App'x 902, 903 (8th Cir. 2015).

### 2. Remaining Defendants

All remaining Defendants have moved to dismiss this count under Rule 12(b)(6).[8] Jackley moves to dismiss by arguing that (1) Lipsky fails to specify which subsection of 18 U.S.C. § 1962 he is moving under; (2) Lipsky does not have statutory standing to bring a RICO claim; and (3) Lipsky fails to adequately plead a substantive RICO violation. Doc. 22 at 5–8. First Premier Bank moves to dismiss by arguing that (1) Lipsky does not have statutory standing to bring a RICO claim and (2) Lipsky fails to adequately plead a substantive RICO violation. Doc. 32 at 5–15. Sanford Health moves to dismiss by arguing (1) Lipsky does not have statutory standing to bring a RICO claim and (2) Lipsky fails to adequately plead a substantive RICO violation. Doc. 34 at 3–10. Thomas Denny Sanford moves to dismiss by arguing that (1) Lipsky does not have statutory standing to bring a RICO claim and (2) Lipsky fails to adequately plead a substantive RICO violation. Doc. 45 at 4–14. Sanford further requests that this Court dismiss with prejudice. Id. at 14.

### a. Standing to Assert Civil RICO Claim

Defendants Jackley, First Premier Bank, Sanford Health, and Sanford assert that Lipsky is an improper plaintiff to assert a RICO claim because he has not shown that he has standing. "Section 1962 of the RICO Act makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir.

---

[8] Judges Piersol, Schulte, and Theeler also move to dismiss by arguing Lipsky has failed to adequately plead a substantive RICO violation. Doc. 42 at 6–13. These Defendants are entitled to absolute judicial immunity, as noted above.

2012) (cleaned up and citation omitted). Section 1961 defines "racketeering activity," and includes "any act which is indictable under . . . title 18, United States Code: Section 201 (relating to bribery)," which Lipsky cites in Count I. 18 U.S.C. § 1961(1)(B); Doc. 1 at 14. RICO provides a private cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter," and allows a person to "sue therefor in any appropriate United States district court and [] recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). See also Dahlgren v. First Nat'l Bank of Holdrege, 533 F.3d 681, 689 (8th Cir. 2008).

Standing in a civil RICO case requires "both factually and proximately caused injury to the plaintiffs' business or property." Newton v. Tyson Foods, Inc., 207 F.3d 444, 446–47 (8th Cir. 2000) (citing Holmes v. Secs. Inv. Prot. Corp., 503 U.S. 258, 265–68 (1992)); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 453 (2006). "This showing 'requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest.'" UMB Bank, N.A. v. Guerin, 89 F.4th 1047, 1053 (8th Cir. 2024) (quoting Regions Bank v. J.R. Oil Co., LLC, 387 F.3d 721, 728 (8th Cir. 2004)). In other words, "[t]o have standing to make a RICO claim, a party must have 1) sustained an injury to business or property 2) that was caused by a RICO violation." Asa-Brandt, Inc. v. ADM Inv. Servs., Inc., 344 F.3d 738, 752 (8th Cir. 2003).

But "§ 1964(c) does not allow recovery for all harms." Med. Marijuana, Inc. v. Horn, 604 U.S. 593, 601 (2025). See also Bowen v. Adidas Am. Inc., 84 F.4th 166, 173 (4th Cir. 2023) ("The phrase 'business or property' does not, however, encompass all possible injuries."); Brown-Austin v. Chambers-Smith, No. 1:23-CV-478, 2025 WL 2013585, at *5 (S.D. Ohio July 18, 2025) ("Recovery for physical injury or mental suffering is not allowed under civil RICO because it is not an injury to business or property." (citing Fleischhauer v. Feltner, 879 F.2d 1290, 1300 (6th

10

Cir. 1989)).  An interest in a lawsuit is considered an intangible property interest, <u>Carhart v. Carhart-Halaska Int'l, LLC</u>, 788 F.3d 687, 691 (7th Cir. 2015), and as noted above, the Eighth Circuit has held an intangible property interest cannot constitute an injury to establish standing for a civil RICO claim, <u>UMB Bank, N.A.</u>, 89 F.4th at 1053.  Further, a plaintiff's expectation of damages in a judicial proceeding has not been recognized as a business or property right under § 1964.  <u>See</u> <u>Jason M. Hatfield, P.A. v. Ornelas</u>, No. 5:22-CV-05110, 2023 WL 8878203, at *2 (W.D. Ark. Dec. 22, 2023) (citing <u>Taylor v. Bettis</u>, 976 F. Supp. 2d 721, 737 (E.D.N.C. 2013) ("Th[e] possibility of a judgment in Plaintiffs' favor, and the possibility of a right to recover therefrom, is not a cognizable injury under RICO.  It is, rather, a 'mere expectancy.'"); <u>Manchester v. Rzewnicki</u>, 777 F. Supp. 319, 329 (D. Del. 1991), <u>aff'd</u>, 958 F.2d 364 (3d Cir. 1992) ("The plaintiff appears to believe that he had a property right in compensatory damages from the Previous Actions but fails to cite to common law or statutory law to support his curious logic."); <u>Nix v. Hoke</u>, 62 F. Supp. 2d 110, 116 (D.D.C. 1999) ("To allow a private RICO plaintiff to go forward on the theory that a judgment sought in litigation is already his 'property' would allow all factually injured plaintiffs to recover under the statute, a result the Supreme Court has expressly rejected.") (citing <u>Holmes</u>, 503 U.S. at 266); <u>Reynolds v. Wilkerson</u>, No. 13-CV-04855, 2014 WL 4062771, at *4 (N.D. Cal. Aug. 14, 2014) (holding that the loss of an underlying medical malpractice claim as the alleged result of RICO violations was "insufficient to qualify as harms to any business or property interest").

Lipsky does not allege any injury in Count I itself.  <u>See</u> Doc. 1 at 14–15.  In his section titled, "Plaintiff's Standing in Case," Lipsky alleges that he has not received discovery in a lawsuit that was dismissed and that his case was "manipulated" as a result of Sanford's bribery.  <u>See id.</u> at 11–12.  Lipsky further notes that there is "circumstantial evidence" that Judge Theeler was also

manipulated "by powerful private interests" when she dismissed his subsequent case against Judge Piersol. Id. at 12.   Even liberally construing his Complaint, as Lipsky has only alleged harm to his intangible property interest in his lawsuits and thus not a concrete financial loss, Lipsky has not alleged any harm to business or property as required by § 1964(c).  Therefore, he has failed to establish statutory standing under RICO. See UMB Bank, N.A., 89 F.4th at 1053.

### b.  Failure to State a Claim

Even if Lipsky had adequately established standing to bring a claim under RICO, Count I still fails to state a claim.  Section 1962 prohibits four different types of activities, which can be summarized in general terms as follows.  First, § 1962(a) makes it unlawful for a person who has received income derived from a pattern of racketeering activity to invest that income in an enterprise.  Next, § 1962(b) prohibits the acquisition or maintenance of an interest in an enterprise through a pattern of racketeering activity.  Third, § 1962(c) makes it unlawful for any person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity.  Fourth, § 1962(d) makes it unlawful to conspire to violate subsections (a), (b), or (c).

Lipsky does not specify which subsection of § 1962 the Defendants allegedly violated. Regardless of whether Lipsky is relying on subsection (a), (b), or (c), he must adequately plead a pattern of racketeering activity.  18 U.S.C. § 1962; First Nat'l Bank & Trust Co. v. Hollingsworth, 931 F.2d 1295, 1303 (8th Cir. 1991).  RICO defines "racketeering activity" as numerous so-called predicate acts, including bribery of public officials, as criminalized by 18 U.S.C. § 201. 18 U.S.C. § 1961(1)(B).  To plead a pattern of racketeering activity, a plaintiff must allege "two or more related [predicate] acts . . . that 'amount to or pose a threat of continued criminal activity.'" Nitro

12

Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (quoting Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999)).

Lipsky alleges in his complaint and appendix that the Defendants engaged in a pattern of racketeering activity by bribing public officials, specifically Judge Piersol and Judge Theeler. See Doc. 1 at 4–5. Section 201(b) penalizes

> (1) whoever . . . directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent . . . to influence any official act; or . . . to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such official" [and]

> (2) whoever . . . being a public official . . . directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for . . . being influenced in the performance of any official act; . . . or being induced to do or omit to do any act in violation of the official duty of such official or person.

18 U.S.C. §§ 201(b)(1)–(2). Federal judges are included in the definition of "public official," and "official act" is defined to include "any decision or action on any question, matter, cause, suit, proceeding, or controversy . . . brought before any public official . . . ." Id. §§ 201(a)(1), (3).

Lipsky contends that the non-Judiciary Defendants violated § 201 by bribing the Judiciary Defendants and gained influence over the outcome of his case and others. Lipsky has not adequately alleged that Piersol or Theeler ruled against him in exchange for something of value from any of the non-Judiciary Defendants. For example, Lipsky claims that "Catherine V. Piersol's salary as a board member for Sanford's companies," including Sanford Health, "are indirect payoffs to her husband Federal Judge Lawrence Piersol to fix court cases on behalf of [Sanford's] wide ranging business interests" but does not provide any supporting facts. Doc. 1 at 4–5. Lipsky alleges "[t]here appears to be another federal judge Camela Theeler whose husband just happens to be a top executive at First Premier Bank," and "it should be clear at this point that

13

Judges Piersol and Theeler are on Denny Sanford's payroll, they are his agents," id. at 5–6, and that "Jackley is the manager for Sanford and his companies [sic] racketeering activities in the state of South Dakota," id. at 7. These statements are similarly conclusory and insufficiently supported to make it plausible that the Defendants violated § 201. See Iqbal, 556 U.S. at 678. Lipsky's allegations do no more than raise the mere possibility that the non-Judiciary Defendants bribed the Judiciary Defendants, which is insufficient under Iqbal and Twombly. See id.[9]

Lipsky has failed to plead a pattern of racketeering activity, so he cannot state a claim under subsections (a), (b), or (c) of § 1962. Because Lipsky has not stated a claim under subsections (a) through (c), he has likewise failed to state a RICO conspiracy claim under subsection (d). Danielson v. Huether, 355 F. Supp. 3d 849, 880 (D.S.D. 2018) (citing First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004)); Rolfes v. MBNA Am. Bank N.A., 416 F. Supp. 2d 745, 754 (D.S.D. 2005)). Therefore, Lipsky's RICO claim has failed to state a claim upon which relief may be granted.

### c. Unserved and Unrepresented parties

Twelve of the defendants, John and Jane Does 1–12, are unidentified and unserved. Although Lipsky lists John and Jane Does 1–12 in his case caption, he does not list any specific

---

[9] Although "pro se complaints are to be construed liberally," the Eighth Circuit has held that "they still must allege sufficient facts to support the claims advanced." Stone, 364 F.3d at 914 (8th Cir. 2004) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). The Eighth Circuit explained:

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Id. at 915.

14

allegations against these parties, or even mention them in his facts or legal claims. See generally Doc. 1. "Simply placing a defendant's name in the caption is not enough to assert their responsibility." Mencin v. City of Troy Police, No. 4:24-CV-852, 2024 WL 4370846, at *3 (E.D. Mo. Oct. 2, 2024) (citing Allen v. Purkett, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints"); Krych v. Hvass, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of pro se complaint against defendants who were merely listed as defendants in the complaint and there were no allegations of constitutional harm against them)). "Plaintiff must provide the role of each named defendant in a case, in order that each specific defendant can receive notice of what he or she is accused of doing." Id. (citing Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim")). This Court has determined that Lipsky's reliance on injuries allegedly suffered in his lawsuits fails to establish civil RICO standing. See supra Section III.A.2.a. This Court also determined in the alternative that Lipsky has failed to state a RICO

15

claim. See supra Section III.A.2.b. These deficiencies justify dismissing without prejudice Count

I against all Defendants, including John and Jane Does 1–12.

### B. Count II – 42 U.S.C. § 1983

Liberally construing Count II, Lipsky asserts a claim under 42 U.S.C. § 1983 for Jackley's

alleged failure to investigate and failure to intervene. See Doc. 1 at 15. Specifically, Lipsky asserts

the following:

> 1. That Attorney General Marty Jackley did willfully refuse to investigate police
> corruption within Fall River County[.]
> 2. Jackley did lie to the court about evidence in his possession and allowed dozens
> if not hundreds of innocent people to be arrested on bogus charges during his term
> as AG.
> 3. On information and belief instructed lead DCI investigator Guy DiBenedetto to
> stand down and not investigate plaintiffs notarized complaint to DCI. (see Lipsky
> v. Cronin attached exhibits notarized complaint to DCI and 2 pdfs from
> LEOSTC)[.]

Id. Jackley moves to dismiss for failure to state a claim under Rule 12(b)(6). Doc. 22 at 9–10.

Jackley argues that Lipsky has failed to plead a violation of a constitutional right and that he is

additionally entitled to qualified immunity. Doc. 22 at 9–10.

A § 1983 claim requires "(1) that the defendant(s) acted under color of state law and (2)

that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal

right." McKay v. City of St. Louis, 960 F.3d 1094, 1099 (8th Cir. 2020) (cleaned up and citation

omitted). Within Count II, Lipsky has alleged that Jackley did not investigate the Fall County

River Police Department after Lipsky requested that he do so. Doc. 1 at 15. "The law is clear that

there is no independent constitutional right to the investigation of another." Danielson, 355 F.

Supp. 3d at 860 n.2 (citing Lee v. City of Philadelphia, 627 F. App'x 175, 177 (3d Cir. 2015) (per

curiam); Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007); Andrews v. Fowler, 98 F.3d 1069,

1078–79 (8th Cir. 1996); Flinchum v. City of Beattyville, 224 F. Supp. 3d 536, 542 n.2 (E.D. Ky.

16

2016); Doe v. Mayor & City Council of Pocomoke City, 745 F. Supp. 1137, 1139 (D. Md. 1990)). See also Andrews, 98 F.3d at 1079 (citing Gomez v. Whitney, 757 F.2d 1005, 1006 & n. 1 (9th Cir. 1985) (stating "we can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved")); Pratt v. Helms, 73 F.4th 592, 595 (8th Cir. 2023) (citing Mitchell v. McNeil, 487 F.3d 374, 378 (6th Cir. 2007) (noting that there is no "statutory or common law right, much less a constitutional right, to an investigation")). If Lipsky claims he has some sort of free-standing right to have Jackley investigate police in Fall River County, "he is incorrect." Danielson, 355 F. Supp. 3d at 860 n.2.

Similarly, "failure to intervene" claims are primarily brought in the context of excessive force and deliberate indifference violations. See, e.g., Dukeman v. Ste. Genevieve Cnty., 167 F.4th 500, 505 (8th Cir. 2026); Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994). For a Fourth Amendment excessive force claim, "a police officer must have (1) observed or had reason to know that excessive force would be or was being used, and (2) had both the opportunity and the means to prevent the harm from occurring." Dukeman, 167 F.4th at 505 (cleaned up and citation omitted). In the Eighth Amendment deliberate indifference context, "[a] prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault." Williams, 13 F.3d at 1216 (collecting cases); see also Walton v. Dawson, 752 F.3d 1109, 1123–24 (8th Cir. 2014). Lipsky has alleged that Jackley failed to intervene in police corruption, but Lipsky has failed to plead any facts concerning constitutional violations for excessive force or deliberate indifference. See Doc. 1. Just as Lipsky cannot rely on a free-standing right to have the police investigated, he cannot rely on a free-standing right for "failure to intervene."

17

As neither allegation is cognizable as a stand-alone constitutional violation for the purposes of a § 1983 claim, Lipsky has failed to state a claim. McKay, 960 F.3d at 1099. As Lipsky has failed to state a claim, this Court does not reach Jackley's qualified immunity argument at this time.

## IV.    Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motions to Dismiss, Docs. 21, 31, 33, 41, 44, are granted. It is further

ORDERED that the Complaint, Doc. 1, is dismissed without prejudice as to Defendants Jackley, Sanford, Sanford Health, First Premier Bank, and John and Jane Doe 1–12, and with prejudice as to Defendants Judges Piersol, Theeler, and Schulte.

DATED this 5th day of May, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE